**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NICK VEDROS, | No. 4:24-CV-02183 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| THE STERLING GROUP OF THE TWIN TIERS, INC., | |
| Defendant. | |

**MEMORANDUM OPINION**

**MAY 14, 2026**

## I.    BACKGROUND

Plaintiff Nick Vedros ("Plaintiff"), a photographer, filed a one-count complaint against Defendant The Sterling Group of the Twin Tiers, Inc. ("Defendant") for a copyright dispute arising out of Defendant's unauthorized use of Plaintiff's photograph on Defendant's website.[1]

On January 5 and 6, 2026, Defendant and Plaintiff moved, respectively, for summary judgment. Specifically, Defendant raised the affirmative defense of the Fair Use Doctrine under 17 U.S.C. § 107. Both parties have submitted multiple briefs in support of their own motion and in opposition to the other's.[2]

---

[1]    Doc. 1 ("Compl.").
[2]    Docs. 20 (Plaintiff Br. in Supp.); 23 (Defendant Br. in Supp.); 25 (Defendant Br. in Opp.); 27 (Plaintiff Br. in Opp.); 28 (Plaintiff Reply Br.).

The dispute is now ripe for resolution. For the reasons stated below, Plaintiff's motion for summary judgment is granted as to Plaintiff's copyright claim and as to Defendant's affirmative defense. Defendant's motion for summary judgment is denied on both fronts; Defendant's affirmative defense fails as a matter of law.

## II.   LAW

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[4] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[5] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[6]

---

[3]   FED. R. CIV. P. 56(a).
[4]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).
[5]   *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).
[6]   *Id.*

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[7] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[8] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[9] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[10]

The standard of review for cross-motions for summary judgment is identical to the typical standard for summary judgment motions.[11] "When confronted with cross-motions for summary judgment . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'"[12]

**B.    Statement of Facts**

With that standard outlining the Court's framework for review, I now turn to the facts, which are largely undisputed.

---

[7]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[8]    *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[9]    FED. R. CIV. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

[10]   FED. R. CIV. P. 56(c)(3).

[11]   *Lawrence v. City of Phila.*, 527 F.3d 299, 210 (3d Cir. 2008).

[12]   *Arsdel v. Lib. Life Assur. Co. of Bos.*, 267 F. Supp. 3d 538, 545 (E.D. Pa. 2017).

Plaintiff is an experienced and accomplished photographer who frequently produces humorous, animal-based work for commercial advertising.[13] Plaintiff's photography sessions and overall production expenses can take several thousand dollars to create, with some requiring over $100,000.[14] One of Plaintiff's photographs in particular, which is the subject of the instant dispute, depicts a dog placing its front paws on a scale with a cat nearby, and shows both animals looking at the dog's weight ("the photograph").[15] The photograph has been reproduced below for context.



[16]

Plaintiff could not locate the invoice for the photograph's creation due to the passage of time, but testifies that it was specifically created for a dog food

---

[13]    Doc. 21 at ¶¶ 2-4, 6.
[14]    *Id.* at ¶ 14.
[15]    *See* Doc. 21-1 (Exhibit 1, "the photograph").
[16]    *Id.*

advertising campaign.[17] The advertising campaign targeted dogs that needed to lose weight, offering a specially formulated food, and Plaintiff rendered this concept artistically by removing the dog's collar and placing it next to the scale.[18] Plaintiff published the photograph in 2007 and registered it with the United States Copyright Office on April 22, 2014 with the name "071015_DogStandingOnScale."[19]

Defendant owns and operates a business involved in the sale of English Labrador Puppies, operating under the name Endless Mt. Labradors at the website domain emlabradors.com.[20] One tab of this website, entitled "BLOG," displays a series of articles on canine-related topics, mostly authored by "Donna Stanley" ("Mrs. Stanley").[21] One article in particular, that in dispute for the instant case, was published on February 4, 2016, entitled "A Breeder's Note on Canine Obesity" ("the article").[22] The article discussed the benefits of feeding dogs a paleo or raw diet.[23] At the top of that article, Defendant displayed a copied version of the photograph, without a photographer credit to Plaintiff.[24] The photograph was reproduced in its entirety, without alteration.[25] At some point during litigation, the photograph was

---

[17]   Doc. 21 at ¶ 15.
[18]   Doc. 21 at ¶¶ 11-12.
[19]   Doc. 21-2 (Exhibit 2).
[20]   Doc. 14 at ¶ 2.
[21]   Doc. 19-4; *see also Blog*, ENDLESS MT. LABRADORS, https://emlabradors.com/blog/ (last visited May 05, 2025).
[22]   Doc. 19-4.
[23]   Doc. 14 at 4-5.
[24]   Doc. 24 at ¶ 13.
[25]   Doc. 24 at ¶ 16.

removed from the article's header; at that time, the article had forty-three (43) views.[26]

## C.   Copyright Infringement

As both parties have moved for summary judgment,[27] the Court will first address the merits of Plaintiff's underlying claim and then turn to Defendant's affirmative defense.

---

[26]   Doc. 24-1. Plaintiff has submitted a hyperlink under Defendant's domain which still links to the photograph. *See* Doc. 16 at ¶¶ 14-15. However, the Court is unsure whether that subdomain is public and how Plaintiff located it. It appears to the Court that this link is some form of moderator link for uploading and downloading content to the rest of the website, as the Court was not able to relocate that link through the website's user interface. Defendant has submitted testimony that the photograph was taken down. Doc. 24-1. Given that no other testimony has been presented, the Court resolves this in the light most favorable to Defendant, resulting in an inference that the photograph was taken down and is no longer publicly available.

[27]   Defendant argues in its brief in opposition that Plaintiff has not moved for summary judgment as to Defendant's affirmative defense of the fair use doctrine. Doc. 25 at 1-2. The Court will decline to adopt such a formalistic view of these motions. It is clear from Plaintiff's briefing that Plaintiff intended to move for summary judgment both on their underlying claim for copyright infringement and as to Defendant's affirmative defense, as Plaintiff addressed the fair use doctrine at length in their brief in opposition. *See* Doc. 27 (Plaintiff Br. in Opp.) at 15 (requesting that the Court dismiss Defendant's fair use affirmative defense as a matter of law); *see also* Doc. 15 (Mot.) at 1 (moving for summary judgment "on the issue of liability"); Doc. 28 (Plaintiff Reply Br.) at 3-4 (asserting that the affirmative defense fails as a matter of law and Plaintiff is entitled to summary judgment on it). The Court will therefore treat the case "as if cross-motions for summary judgment were filed." *See Clauss v. Plan*, 196 F. Supp. 3d 463, 466 (M.D. Pa. 2016) (where Plaintiff did not file a motion for summary judgment but did request judgment against Defendant, the Court treated the issue as a formal motion for summary judgment).

Additionally, even if Plaintiff had not moved for summary judgment on the affirmative defense, the Court would be justified in granting summary judgment on the issue *sua sponte*, as Defendant has already addressed the affirmative defense in their own motion for summary judgment. *See Acumed LLC v. Advanced Surgical Servs. Inc.*, 561 F.3d 199, 223-24 (3d Cir. 2009). Parties' motions and briefs clearly address the issue of the fair use defense, and the Court will therefore construe Plaintiff's briefings as not only a motion for summary judgment on their own claim but also on Defendant's affirmative defense.

Plaintiff brings one claim of copyright infringement under 17 U.S.C. § 501.[28] For this claim, Plaintiff must show that "(1) [he] owns a valid copyright and (2) [Defendant] copied protected, original elements without authorization."[29]

Plaintiff has presented evidence sufficient to prove each element. Plaintiff has submitted the copyright for the photograph which lists Plaintiff as the owner,[30] and evidence of Defendant's copying and republishing of the photograph on Defendant's website.[31] Defendant does not dispute that Plaintiff has proven both elements, only raising the fair use doctrine as an affirmative defense.[32] Accordingly, Defendant has waived argument as to Plaintiff's underlying copyright infringement claim.[33]

### D. Fair Use Doctrine

Defendant raises the fair use doctrine as an affirmative defense, which provides the main source of dispute for the instant motion.[34] The fair use doctrine is "'an equitable rule of reason that permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that

---

[28] Doc. 1 at Count I.

[29] *Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F. 4th 331, 335 (3d Cir. 2022).

[30] Doc. 19-2 at 2-3.

[31] Doc. 19-4 at 3-4.

[32] Defendant filed a brief in support of their own motion, Doc. 23, that they incorporated into a brief in opposition of Plaintiff's motion as well, Doc. 25. These two briefs only raise the issue of the fair use affirmative defense, and do not assert in any capacity that Plaintiff has not made out a case for copyright infringement.  Docs. 23, 25 at *passim*.

[33] *Yanoski v. Silgan White Cap Americas, LLC*, 179 F. Supp. 3d 413, 426 (M.D. Pa. 2016) ("It is well-established that a party's failure to argue an issue on summary judgment constitutes a waiver of that issue.").

[34] Doc. 7 at ¶ 59; Doc. 20 (Plaintiff's Br. in Supp.); Doc. 23 (Defendant's Br. in Supp.).

law is designed to foster.'"[35] "As codified at 17 U.S.C. § 107, 'the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research, is not an infringement of copyright.'"[36] As an affirmative defense, the party asserting fair use bears the burden of proof.[37]

The Copyright Act sets out four, nonexclusive factors for courts to consider when determining the applicability of the fair use doctrine.[38] These factors are:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work."[39]

---

[35] *Am. Soc. For Testing & Materials v. UpCodes, Inc.*, 172 F.4th 253, 261 (3d Cir. 2026) ("*Am Soc. II*") (quoting *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18 (2021)) (internal quotation omitted). *See also Am. Soc.*, 752 F. Supp. 3d 480, 498 (E.D. Pa. 2024) ("*Am. Soc. I*").

[36] *Am. Soc. II*, 172 F.4th at 261 (quoting *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 197 (3d Cir. 2003), *abrogated on other grounds by TD Bank N.A. v. Hill*, 928 F.3d 259 (3d Cir. 2019)).

[37] *Id.*

[38] *Id.*; 17 U.S.C. § 107.

[39] *Id.*; 17 U.S.C. § 107.

"All factors 'are to be explored, and the results weighed together, in light of the purposes of copyright.'"[40] Fair use is quite dependent on context, as this is not an area susceptible to bright-line rules.[41]

### 1.    Factor One: The Purpose and Character of the Use

The first fair use factor compares the purpose and character of the infringing use to the original.[42] This factor addresses "'the reasons for, and nature of, the copier's use of an original work,'"[43] with two main considerations: whether the infringing use is commercial in nature, and whether the infringing use transforms the original work.[44] This factor is not dependent on subjective intent; rather, it is an "'objective inquiry into what use was made, *i.e.*, what the user does with the original work.'"[45]

This first factor, purpose of use, "necessarily relates to the 'justification' for the use."[46] "Broadly, a use with a distinct purpose is 'justified' because it is more

---

[40]    *Id.* (quoting *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 306 (3d Cir. 2011)).

[41]    *Id.* (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994)).

[42]    *Id.*

[43]    *Id.* (quoting *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023) ("*Goldsmith*")).

[44]    *Id.* at 262-264.

[45]    *Am. Soc. II*, 172 F.4th at 262.

[46]    *Am. Soc. II*, 172 F.4th at 262 (quoting *Goldsmith*, 598 U.S. at 531). Previously, "bad faith" had been a relevant consideration for this factor as well. *Warren Pub. Co. v. Spurlock*, 645 F. Supp. 2d 402, 417 (E.D. Pa. 2009) (referencing *Harper & Row*, 471 U.S. at 562). The Supreme Court has since called into question whether bad faith should be part of the determination. *Campbell*, 510 U.S. at 585 n.18. The Third Circuit recently analyzed fair use, and discussed "justification" as part of the transformative use factor rather than assessing bad faith as an independent sub-factor for purpose and character of the infringement. *Am. Soc. II*, 172 F.4th at 265.

likely to further the goals of copyright without lessening the incentive to create."[47]

"More narrowly, whether a use has a compelling 'independent justification' for copying—like needing to mimic a song to create a parody—is relevant under the first factor, particularly when the original and the copy 'share the same or highly similar purposes.'"[48] However, the law "imposes no requirement that a work comment on the original" to be transformative; in some instances, like news reporting, "the 'need to convey information to the public accurately' makes it preferable and compatible with copyright law for a defendant to 'faithfully reproduce an original work without alteration.'"[49]

### a.   Commercial Nature

The first consideration under the purpose and use factor is whether a work is commercial or noncommercial in nature. While not alone determinative, an infringing work that serves noncommercial purposes is more likely to qualify for fair use.[50] However, courts should consider both direct and indirect monetary benefits when analyzing this factor, as "indirect commercial advantage is also relevant to assessing commerciality, but it carries less weight than evidence of direct profit."[51]

---

[47] *Am Soc. II*, 172 F.4th at 262 (quoting *Goldsmith*, 598 U.S. at 531).

[48] *Id.*

[49] *Harbus v. Manhattan Inst. For Policy Rsch.*, 19 Civ. 6124, 2020 WL 1990866, at *4 (S.D.N.Y. Apr. 27, 2020) (similarly dealing with a copyrighted photo used at the top of an article).

[50] *Am. Soc. II*, 172 F.4th at 265-66.

[51] *See Am. Soc. II*, 172 F.4th at 266; *Blanch v. Koons*, 467 F.3d 244, 253 (2d Cir. 2006) (noting that the "commercial/nonprofit dichotomy concerns the unfairness that arises when a secondary user makes unauthorized use of copyrighted material to capture significant revenues as a direct consequence of copying the original work."); *FameFlynet, Inc. v. Jasmine Enters.*,

For instance, "tangential benefits" from copying which could indirectly bolster a company's commercial performance are relevant considerations.[52] "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price."[53]

There is insufficient evidence in the record from which Defendant could meet its burden to show that this was a noncommercial use. Defendant touts that the photo was used on an article posted on the "blog" section of the website, and the article describes the detriments of canine obesity.[54] That, however, is where the "educational" purposes end. The article recommends buying natural dog food,[55] and, on another tab on the website, Defendant sells natural dog food.[56] The canine focused article is also related to the main business purpose of the website, selling labradors.[57]

---

*Inc.*, 344 F. Supp. 3d 906, 911-912 (N.D. Ill. 2018) (where "[defendant] attempt[ed] to distinguish its blog from its website and suggest that the blog could be considered to be for 'nonprofit educational purposes,'" but failed to present affirmative evidence of such claims to carry its burden under fair use).

[52] *Am. Soc. II*, 172 F.4th at 265; *see also Stross v. Stone Textile*, 1:18-CV-454, 2019 WL 4060888, at *4 (W.D. Tex. June 27, 2019) ("Here, the blog is conducted under the auspices of [defendant's] business, promoting [defendant's] brand, rather than under a separate non-profit entity with purely journalistic or educational purposes. Indeed, the blog itself links to [defendant's] commercial website.").

[53] *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 562 (1985); *Am. Soc. II*, 172 F.4th at 265 (quoting *Harper*).

[54] Doc. 21-4.

[55] Doc. 21-4.

[56] *See Life's Abundance Dog Food*, ENDLESS MT. LABRADORS, https://emlabradors.com/httpslifesabundancecompetslifesabundancelifesabundancedogaspxre alname20210230categoryallstagedogfood-v11pet-base/ (last visited May 05, 2025).

[57] Doc. 21-4; *see also Upcoming Litters*, ENDLESS MT. LABRADORS, https://emlabradors.com/upcoming-litters/ (last visited May 05, 2025).

Indeed, the title of the article is "A Breeder's Note On Canine Obesity," calling attention to the fact that the author is herself a dog breeder.[58] Other tabs on the website also link to products for purchase related to homeopathic dog health treatments.[59] The blog is not an independently run educational blog, nor has Defendant provided any evidence that the business is a non-profit entity.

Moreover, the photo itself is, at best, only tangentially related to the article's educational purposes. The article alone provides any realized educational benefit, while the photograph is merely an attention-getting thumbnail.[60] The article does not describe or interact with the photograph at all, nor is the photograph asserting anything of educational value.[61] It is clearly intended as a humorous depiction of two animals rather than an informational pictograph.

In support of its contention that the infringement was for noncommercial purposes, Defendant submitted an affidavit by Jonathan Stanley ("Mr. Stanley"), the owner of Sterling Group, which states repeatedly that the photograph was used for educational purposes.[62] This affidavit suffers from several deficiencies. First, most of Mr. Stanley's testimony, which repeats in various forms that the use was "noncommercial" and for "educational" purposes, is conclusory in nature and need

---

[58]   Doc. 19-4.
[59]   The "Essential Oils For Pets" tab links to a website selling, unsurprisingly, essential oils for pets. *Olia Essential Oils For Pets*, https://www.oliaforpets.com/ (last visited May 05, 2025).
[60]   *See* Doc. 14 at ¶ 5 (stating that the photograph was displayed "for illustrative purposes").
[61]   By the Court's assessment, the dog in the photograph is not even obese.
[62]   Doc. 14 at 2-4.

not be credited.[63] Moreover, there is a significant lack of foundation from which the Court can determine Mr. Stanley's basis for asserting the use was noncommercial. Other than his status as owner of Sterling Group, he provides no facts demonstrating his source of knowledge for why or how that graphic was chosen.[64] Indeed, it was Mrs. Stanley, his wife, who authored the article and presumably chose the graphic.[65] There is no testimony in the record regarding Mrs. Stanley's intention for the infringement, or any facts to support Mr. Stanley's conclusory assertions that the use was intended to be noneconomic.[66]

Even if Defendant's affidavit could be credited, this single assertion that the use was intended to be noneconomic is insufficient to create a genuine dispute of material fact. The inquiry for this factor is objective, not subjective.[67] Objectively,

---

[63] *See* Doc. 14 at ¶ 3 ("The photograph was included solely to illustrate educational content for the benefit of the public"); at ¶ 4 ("The use of the photograph was noncommercial in nature . . . . The photograph was used in a manner consistent with educational, informational and public interest purposes"); at ¶ 7 ("The Sterling Group acted in good faith in the use of the photograph for educational purposes"); at ¶ 8 ("The educational content, including the photograph, was made available to the general public for information purposes only.").

[64] Doc. 14 at 2-4. Mr. Stanley asserts, once again in a conclusory manner, that he "ha[s] personal knowledge of the facts set forth herein," but does not set forth those facts in the affidavit.

[65] Doc. 19-4 at 3 (listing the author as Donna Stanley).

[66] Additionally, Defendant provides no similar cases where such a blog tied to a commercial, for-profit business was found to be noncommercial in nature. Exemplar cases the Court has located suggest an opposite finding. *See FameFlynet, Inc. v. Jasmine Enters., Inc.*, 344 F. Supp. 3d 906, 911-912 (N.D. Ill. 2018) ("[E]ven if it is true that [defendant] makes no money directly from the blog, '[f]inancial benefit exists where the availability of infringing material acts as a draw for customers.'") (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F. 3d 1004, 1023 (9th Cir. 2001)); *Stross v. Stone Textile*, 1:18-CV-454, 2019 WL 4060888, at *4 (W.D. Tex. June 27, 2019) ("Here, the blog is conducted under the auspices of [defendant's] business, promoting [defendant's] brand, rather than under a separate non-profit entity with purely journalistic or educational purposes. Indeed, the blog itself links to [defendant's] commercial website.").

[67] *Am. Soc. II*, 172 F. 4th at 262.

the article's content and description, while arguably providing some educational benefit, were attached to the business purposes of Defendant's overall website.[68] As Defendant brings the affirmative defense of fair use, it is Defendant's burden to show that the use was noncommercial. Defendant has not provided evidence of this. More specifically, Defendant has failed to show that the blog provided no indirect financial benefit to the business.[69] For instance, Defendant has not provided web analytics of traffic from the blog showing that visitors did not view the rest of the website, or revenue statements showing that the website provided no financial benefit to the business.

Accordingly, Defendant has provided insufficient evidence for a jury to find, by a preponderance of the evidence, that the photograph's use was noncommercial in nature. Accordingly, this sub-factor weighs against a finding of fair use.

### b.      Transformative Use

The second consideration for the purpose and character of the use factor is whether the infringing use transforms the original work. In analyzing whether the infringement is transformative, courts ask if the use adds "'something new, with a

---

[68]   *See FameFlynet*, 344 F. Supp. 3d at 911-12 ("The only reasonable inference from the facts in the record is that [defendant's] blog is designed to act as a draw for customers, regardless of whether [defendant] makes money from the blog itself. [Defendant] cites no testimony from its representatives or other evidence to the contrary.").

[69]   Tellingly, even Mr. Stanley's affidavit provides no such assertion. In his affidavit, he asserts that "[t]he Sterling Group did not receive any *direct* financial benefit from the display of the photograph in the educational section." Doc. 14 at ¶ 4 (emphasis added). He makes no such assertion for indirect benefit.

further purpose or different character'" to the work, or if the copier merely republishes the original without alteration.[70] "A use with a further purpose or different character is described as 'transformative.'"[71] "Transformativeness is a 'matter of degree[,]' . . . [and] [t]he 'degree of difference must be weighed against other considerations' under the first factor, like the extent to which the use is commercial or nonprofit."[72]

"[A] secondary work 'can be transformative in function or purpose without altering or actually adding to the original work.'"[73] If the copier uses the work in a new and distinct way, an unaltered work can still be transformative. "For example, news reporters must 'faithfully reproduce an original work without alteration,' but 'a reporter's message ('this is what they said') is very different from the original message ('this is what you should believe'),' so the use is still transformative.'"[74]

Ultimately, "[w]hether and to what extent a use is transformative 'relates to the justification for the use.'"[75] "[A] use that has a distinct purpose is justified because it furthers the goal of copyright, namely, to promote the progress of science and the arts, without diminishing the incentive to create."[76] "The more the copier

---

[70]  *See Am. Soc. II*, 172 F.4th at 262-63 (quoting *Goldsmith*, 598 U.S. at 528).
[71]  *Id.* (quoting *Goldsmith*, 598 U.S. at 529).
[72]  *Am. Soc. II*, 172 F.4th at 262 (quoting *Goldsmith*, 598 U.S. at 525).
[73]  *Am. Soc. II*, 172 F. 4th at 263 (quoting *Am. Soc. for Testing and Materials v. Public.Resource.Org, Inc.*, 82 F. 4th 1262, 1268 (D.C. Cir. 2023)).
[74]  *Am. Soc. I*, 752 F. Supp. 3d at 498.
[75]  *Id.*
[76]  *Goldsmith*, 598 U.S. at 531.

uses copied material for transformative purposes, 'the more it serves copyright's goal of enriching public knowledge' and the less likely it is that copying will merely 'serve as a substitute for the original.'"[77] Courts should consider whether reproduction is "reasonably necessary to achieve the user's new purpose."[78]

Here, the work was not transformative. Defendant concedes that the photograph was used in its entirety without alteration, but argues that the photograph's connection with an educational article renders the infringing use disparate from the photograph's original purpose.[79] Plaintiff has submitted undisputed testimony indicating that the original work was created as an advertisement for dog food.[80] The original dog food specifically had options for obese dogs, or dogs needing to lose weight.[81] Defendant's use of this photograph, as an eye-catching graphic atop an article about dog food options on a blog connected to their website which also sells dog food, is not transformative from the original use and purpose of the graphic. Defendant did not alter the work, instead reusing the photograph in its entirety. When a work is reproduced exactly for the same purpose as the original, the use is not transformative.[82]

---

[77] *Am. Soc. I*, 752 F. Supp. 3d at 498.
[78] *Goldsmith*, 598 U.S. at 532.
[79] Doc. 23 at 4.
[80] Doc. 21 at ¶ 11.
[81] Doc. 21 at ¶ 12.
[82] *See Balsley v. LFP, Inc.*, 691 F.3d 747, 759 (6th Cir. 2012).

Moreover, even if Defendant's assertions are taken as true that the purpose of using the photograph was "to inform readers about an obese dog,"[83] Defendant still fails to show that this use was objectively transformative. Per Plaintiff's testimony, the photograph was designed to inform and draw readers' attention to canine obesity.[84] Defendant used the photograph to inform and draw readers' attention to canine obesity.[85] "[I]t appears that [Defendant] did not want to go to the trouble of creating their own eye-catching photo" for the article's header and instead "appropriated the [photograph] for the same purpose" as the original."[86]

Additionally, the photograph was unrelated to and unnecessary for accomplishing Defendant's "educational" goals for the article. The photograph was placed atop the article as an eye-catching thumbnail; the article did not reference or discuss that photograph at all, nor did the photograph give scientific examples of canine obesity such that its use served a different purpose than the original.[87] That specific photograph could have been replaced with any other photograph and the article's "educational value" would remain unchanged. As such, the photograph was

---

[83]   Doc. 14 at ¶ 4. This assertion is nonsensical when examining the context in which the photograph was used. The article does not reference the photograph or draw attention to any one obese dog in particular, nor does the photograph depict an example of an obese dog.

[84]   Doc. 21 at ¶¶ 11-12.

[85]   Moreover, the article itself appeared to be an advertisement for natural dog food, which is sold on Defendant's own website.

[86]   *Murphy v. Millennium Radio Group LLC*, 650 F.3d 295, 307 (3d Cir. 2011).

[87]   Doc. 19-4 at 3.

not "reasonably necessary," or necessary in any capacity, to accomplish Defendant's purported educational goals.[88]

In sum, Defendant has not met their burden to show that the infringing use of the photograph was transformative. Instead, Defendant used the unaltered photograph in its entirety for a similar use to the original without adding any further commentary or substance to the photograph. As such, the transformative sub-factor also weighs against a finding of fair use. Therefore, as Defendants have failed to show that the use was noncommercial or transformative, factor one overall weighs strongly against a finding of fair use.

## 2. Nature of the Copyrighted Work

The second factor to consider is the nature of the copyrighted work, as "'[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy.'"[89] Fiction and creativity rest at the heart of copyright's intended protection, while factual works linger on the outskirts.[90] "Thus, fair use is easier to establish for primarily factual works."[91]

Defendant does not dispute that this factor weighs against a finding of fair use, agreeing that "[p]hotographs are often viewed as creative, aesthetic expressions and

---

[88] *See Goldsmith*, 598 U.S. at 532.
[89] *Balsley v. LFP, Inc.*, 691 F.3d 747, 759 (6th Cir. 2012) (quoting *Harper & Row*, 471 U.S. at 563).
[90] *Am Soc. II*, 172 F.4th at 266-67.
[91] *Id.* at 267.

have historically received strong copyright protection."[92] Instead, Defendant argues only that the educational purposes outweigh this factor.[93] Defendant has accordingly conceded that this factor weighs against fair use.

Regardless, the Court's own analysis confirms that the nature of this work weighs against a finding of fair use. The photograph at issue is a creative work, not an informational photograph. The photograph is not a factual or scientific depiction of an obese dog, rather, the photograph is a humorous depiction of two animals looking at a scale. Accordingly, the nature of the work also weighs against a finding of fair use.

### 3.     Amount and Substantiality of the Portion Used

The third factor is the "'amount and substantiality of the portion used in relation to the copyrighted work as a whole.'"[94] For this inquiry, courts address whether "the extent of copying is 'reasonable in relation to the purpose of the copying.'"[95] Although wholesale copying does not *per se* preclude fair use, "'the more of a copyrighted work that is taken, the less likely the use is to be fair.'"[96]

Defendant acknowledges that Defendant used the entire photograph, but argues that use of the entire photograph was justified as "integral to its educational

---

[92]   Doc. 23 at 4.
[93]   *Id.*
[94]   *Am Soc. II*, 172 F.4th at 267 (quoting 17 U.S.C § 107(3)).
[95]   *Id.* (quoting *Campbell*, 510 U.S. at 586).
[96]   *FameFlynet*, 344 F. Supp. 3d at 913 (quoting *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir. 19998)).

function within the article."[97] This argument is indefensible. As discussed previously, the photograph was clearly not integral to the "educational function" of the article, as the photograph did not interact with the article at all nor did the photograph itself bring any independent educational benefit. Moreover, even if using the part of the photograph depicting the dog on a scale[98] could be considered integral to Defendant's use of it, Defendant advances no argument for why including the entire photograph was necessary.[99] Specifically, Defendant included not only the dog on a scale but also the cat looking at the dog's situation. The article makes no mention of feline obesity. The entire photograph certainly is not integral to educating the public about the dangers of canine obesity.[100]

This is not a situation where the entire photograph was used "contextually," as "explanatory" or "background" material to "aid in understanding and

---

[97] Doc. 23 at 5.

[98] The scale depicted is not a canine scale, nor does the photograph show how to accurately measure a dog's weight. The photograph depicts a dog standing with its front legs on a human scale, which would not accurately capture the dog's lower body weight. Accordingly, the argument that this depiction is "integral" to educate the public on canine obesity is not well taken, as this would not even be the correct way to weigh a dog.

[99] Defendant relies on *Nunez v. Caribbean Intern. News Corp.* to argue that using the entire work was necessary to achieve the educational purpose. Doc. 23 at 5; 235 F.3d 18, 24 (1st Cir. 2000). *Nunez* does not provide the support that Defendant so claims, as in *Nunez* the infringer could not have copied any less of the picture without rendering the picture "useless to the story." *Id.* Not only could Defendant here have forgone the photograph completely without affecting the article's educational value whatsoever, Defendant certainly could have copied far less of the photograph by only including the part with the dog.

[100] *Cf Nunez*, 235 F.3d at 24 (where debatably pornographic photographs were a source of controversy, publishing the substance of those photographs in an article about the controversy was necessary).

interpreting" a permissible purpose.[101] Instead, Defendant copied and pasted Plaintiff's work in its entirety without justification. Defendant has not presented evidence from which a reasonable jury could conclude that this factor would weigh in its favor. Accordingly, as Defendant used the entire photograph without a valid or transformative purpose,[102] this factor weighs strongly against a finding of fair use.

### 4.    The Effect on the Market for the Copyrighted Work

"The fourth statutory factor examines 'the effect of the use upon the potential market for or value of the copyrighted work.'"[103] "This factor 'must take [into] account not only . . . harm to the original but also . . . harm to the market for derivative works.'"[104] "Courts must consider 'the extent of market harm caused by the particular actions of the alleged infringer,' as well as the potential market ramifications of 'unrestricted and widespread conduct of the sort engaged in by the defendant.'"[105]

"The Supreme Court has cautioned that '[s]ince fair use is an affirmative defense, its proponent [will] have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets.'"[106] Additionally, when

---

[101] *See Am. Soc. II*, 172 F.4th at 268.

[102] *Id.* at 267 (noting that "the third factor relates back to the first factor—it will 'generally weigh in favor of fair use where ... the amount of copying was tethered to a valid, and transformative, purpose.'") (quoting *Google*, 593 U.S. at 34).

[103] *Am Soc. II*, 172 F.4th at 268 (quoting 17 U.S.C. § 107(4)).

[104] *Id.* (quoting *Video Pipeline*, 342 F.3d at 202).

[105] *Id.* (quoting *Campbell*, 510 U.S. at 590).

[106] *Id.* (quoting *Campbell*, 510 U.S. at 590).

a commercial use is non-transformative and duplicates the original in its entirety, courts often presume that there was market harm.[107]

Here, as Defendant has failed to show that this use was non-commercial as discussed above, and as this work was a non-transformative duplication of the original, market harm is presumed. Regardless, though, weighing the harm from Defendant's particular actions against the potential harm from widespread infringement, Plaintiff has established market harm. More importantly, Defendant has not presented any evidence to the contrary, as is its burden.

From the evidence in the record, the extent of market harm from Defendant's particular use of the photograph is minimal. Defendant's particular actions did not cause Plaintiff's market great harm, as Defendant did not offer the photograph for resale and the blog post was seemingly insulated from other platforms and located only on the breeder's website. Additionally, Defendant's audience was relatively small. At the time Defendant responded to Plaintiff's interrogatories, and at the time the photograph was removed from the website, the article had forty-three (43) views.[108]

However, Plaintiff has established that there is large potential for market harm should infringement like Defendant's become widespread. Plaintiff licenses his

---

[107] *See Campbell*, 510 U.S. at 591; *Murphy*, 650 F.3d at 308; *Philpot v. Independent Journal Review*, 92 F.4th 252, 261 (4th Cir. 2024).

[108] Doc. 18-4 at ¶¶ 16-17, Doc. 24-1 at 2. Since then, the article has reached over 11,000 views, but it is unclear how many views came about as a result of the litigation. Doc. 21-4.

photographs to advertising campaigns and pet-related ventures.[109] Plaintiff has provided testimony that he relies on the ability to license and sell his photographs for his livelihood, and that he would be detrimentally affected by widespread infringement.[110] Plaintiff could not locate the specific invoices for the photograph at issue, but testifies that creating similar photographs costs upwards of $100,000.[111] It is evident that, should a large part of Plaintiff's consumer base begin copying his work without paying for it, Plaintiff's incentive to continue creating such works would diminish greatly.[112]

As Defendant raises fair use as an affirmative defense, it is Defendant's burden to provide evidence contradicting this testimony, as the Supreme Court has outlined.[113] Yet Defendant has failed to provide any affirmative evidence that the infringing use would not affect Plaintiff's market. Instead, Defendant advances several arguments: first, that Defendant received no direct commercial benefit from using the photograph; second, that there is "no evidence of market harm" to Plaintiff; third, that there is "no commercial use" for a "picture of a dog on a scale;" and

---

[109]  Doc. 21 at ¶ 14.

[110]  Doc. 21 at ¶ 7.

[111]  Doc. 21 at ¶ 14. The specific amount of damages Plaintiff would receive should be addressed at a later stage of litigation, as neither party has presented evidence or testimony on damages at this stage.

[112]  Plaintiff has not, though, provided evidence that he was actively licensing the work or exploiting the market for his photographs. *See, e.g.*, *Warren Pub. Co.*, 645 F. Supp. 2d at 427-28 (noting that the failure to exploit copyrights substantially detracts from argument on fourth factor). Therefore, this factor does not weigh strongly in Plaintiff's favor.

[113]  *Am Soc. II*, 172 F.4th at 268 (quoting *Campbell*, 510 U.S. at 590).

finally, that a similar photograph "could have been produced using artificial intelligence."[114] None of these arguments are meritorious. The Court addresses each in turn.

First, Defendant's claim that it received no direct commercial benefit from the photograph is unavailing. Defendant's commercial benefit was addressed squarely in factor one, and, as the Court has already noted, Defendant has not proven that the infringing use provided no indirect benefit. Regardless, this fourth factor focuses not on direct financial benefit to Defendant, but rather the harm to Plaintiff's work and market.[115] Courts may also consider the benefit to the public from Defendant's infringing use, weighing it against Plaintiff's harm.[116] The Court will repeat for thoroughness, at the risk of redundancy, that the use of this specific photo brought no educational benefit to the public. Defendant's argument that the photograph's "educational value" must outweigh any harm to Plaintiff's potential markets therefore fails, as insufficient public benefit has been shown.

Second, Defendant incorrectly asserts that the burden rests with Plaintiff to demonstrate market harm.[117] As Defendant raises the affirmative defense of fair use, it is Defendant's burden to show favorable evidence about relevant markets.[118]

---

[114] Doc. 23 at 5-6.
[115] *Am Soc. II*, 172 F.4th at 268.
[116] *Id.*
[117] Doc. 23 at 6.
[118] *Campbell*, 510 U.S. at 590.

Defendant has failed to produce any such evidence. "Defendant[] fault[s] [Plaintiff] for not providing more evidence about the market for his work, but this misplaces the evidentiary burden."[119]

Third, Defendant argues that "[t]here was no commercial use for the photograph" because it was "a picture of a dog on a scale" which "simply illustrated a dog stepping on a scale."[120] With this argument, Defendant implies that photographs depicting real life objects, or silly scenarios, cannot be copyrighted. This argument is manifestly contrary to all relevant authority.[121] Plaintiff has established that he sells these photographs, and that producing them requires significant resources.[122] Defendant may believe Plaintiff's work is unserious. That belief, however, provides no support for Defendant's contention that there is "no commercial use for the photograph."[123] Indeed, Defendant clearly believed the photograph was useful when using it as the cover photo for an article.

Finally, Defendant's argument that artificial intelligence ("AI") could have been used to generate the image is not well taken.[124] To be clear, there is no

---

[119] *Murphy*, 650 F.3d at 309 n.17.
[120] Doc. 23 at 6.
[121] *See, e.g., Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 410 (2017); *Silvertop Assoc's. Inc. v. Kangaroo Manuf. Inc.*, 931 F.3d 215, 221-222 (3d Cir. 2019) ("[Defendants] ask us to hold that depictions of natural objects in their natural condition can never be copyrighted. This argument seeks to raise the originality requirement's very low bar, which precedent forecloses for good reason.").
[122] Doc. ¶¶ 11, 14.
[123] Doc. 23 at 6.
[124] Doc. 23 at 6.

25

contention that Defendant actually used AI to generate the image. Instead, Defendant asks the Court to rule, without any legal support, that copyright does not protect works which *could have been* generated with AI.[125] Such a holding would destroy the foundations of copyright law. The Court declines to endorse or entertain this proposition.

Defendant has failed to present evidence demonstrating a lack of harm to the potential market for Plaintiff's work. Harm is presumed from Defendant's specific use of the photograph, and, regardless, there is a high potential that widespread infringement like Defendant's would hurt the market for Plaintiff's work. Accordingly, Defendant cannot meet its burden for this factor, and it, therefore, does not weigh in favor of fair use.

### 5.   Overall Assessment

"All factors 'are to be explored, and the results weighed together, in light of the purposes of copyright.'"[126] Analyzing the four fair use factors, Defendant has not

---

[125] But why stop there? Defendant could have also taken its own photograph of a dog on a scale with the very dogs it breeds. Perhaps Defendant could also sculpt Michaelangelo's David, or re-paint the Mona Lisa, depending on Defendant's talent. Under Defendant's logic, the only works entitled to protection would be those which no machine or human could recreate. This argument cannot stand.

The case that Defendant cites for this absurd proposition, *Thaler v. Perlmutter*, provides no such support. Doc. 23 at 6; 130 F.4th 1039, 1048-50 (D.C. Cir. 2025). Indeed, *Thaler* holds that "the human authorship requirement does not prohibit copyrighting work that was made by or with the assistance of artificial intelligence." *Id.* Defendant provides no other authority for its proposition. None exists.

[126] *Am Soc. II*, 172 F. 4th at 261 (quoting *Murphy*, 650 F. 3d at 306).

met its burden to prove that any of the factors weigh in favor of fair use. Specifically, the nature of the work is artistic, Defendant used the entire photograph in a non-transformative way, and Defendant has not presented evidence demonstrating that the use was noncommercial nor that there would be a minimal effect on the market. Defendant has presented insufficient evidence to raise any genuine disputes of material fact.[127] Accordingly, Plaintiff's motion for summary judgment on Defendant's affirmative defense of fair use is granted. Defendant's motion for summary judgment is denied.

### E.    Damages

Plaintiff has moved only for summary judgment on the issue of liability, not damages.[128] At this time, neither party has addressed the issue of damages, and the Court will therefore grant Plaintiff's motion for summary judgment only on the issue of liability. Parties shall submit a status report within fourteen (14) days from the date of the accompanying Order addressing how they would care to proceed on the issue of damages.

---

[127]   Plaintiff has described the situation well: "[m]erely labeling a use 'nonprofit,' 'educational,' and 'noncommercial' does not establish fair use, particularly where the website is part of a commercial enterprise and the photograph is used exactly for its original illustrative purpose without transformation." Doc. 27 at 12.

[128]   Doc. 15 (Mot.) (moving for summary judgment "on the issue of liability").

## III.    CONCLUSION

Defendant has failed to produce evidence sufficient for a rational person to conclude, by a preponderance of the evidence, that the fair use doctrine permits the infringement. Defendant's affirmative defense fails as a matter of law. Plaintiff's motion for summary judgment is granted as to copyright infringement and as to Defendant's affirmative defense. Defendant's motion for summary judgment is denied. Judgment is entered in favor of Plaintiff and against Defendant. The parties are instructed to submit a status report within fourteen (14) days from the date of the accompanying Order addressing how the question of damages shall proceed.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

28